UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERVIN STUBBS,

         Plaintiff,

v.

UNKNOWN PLOWMAN et al.,

         Defendants.

_____/

Case No. 1:24-cv-982

Honorable Jane M. Beckering

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed an affidavit of indigence in support of a request for leave to proceed *in forma pauperis*. (ECF No. 2.) However, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of

---

gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See* Op. & J., *Stubbs v. Wilson et al.*, Case No. 2:24-cv-23 (W.D. Mich. Feb. 27, 2024); Op. & J., *Stubbs v. Schroeder et al.*, Case No. 2:24-cv-22 (W.D. Mich. Feb. 23, 2024); Op. & J., *Stubbs v. Schroeder et al.*, Case No. 2:22-cv-206 (W.D. Mich. Mar. 17, 2023). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996.

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at

3

492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is presently incarcerated at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sergeant Unknown Plowman and Corrections Officers Unknown Jameson, Unknown Keogh, and Unknown Floyd in their official and personal capacities.

Plaintiff alleges that on August 15, 2024, while he was on LOP (loss of privileges), he was taken to the shower. (ECF No. 1, PageID.3.) Plaintiff states that he was using a topical shampoo for his eczema and that the shampoo must stay on the skin for a few minutes. (*Id.*) Plaintiff states that Defendant Keogh and Officer Hennings both began to yell at him to get out of the shower. (*Id.*) Plaintiff attempted to explain, but Defendant Keogh began cursing at Plaintiff. (*Id.*) Plaintiff yelled that he would come out of the shower after he rinsed off, and Plaintiff proceeded to do so. (*Id.*) Defendant Keogh continued to yell at Plaintiff to go to his cell and Plaintiff responded, "I don't move fast enough, you gon [sic] beat my ass or something?" (*Id.*) Defendant Keogh then told the officer in the bubble to call the Sergeant. (*Id.*)

While Plaintiff was in his cell taking care of hygiene, a group of officers came to his cell door and told him to come to the door and cuff up. (*Id.*) Plaintiff complied after he finished dressing and grabbed "all of the Ibuprofen" he had and put it in his pocket. (*Id.*) Once in the hallway, Defendant Plowman searched Plaintiff. (*Id.*) Plaintiff told Defendant Plowman that the Ibuprofen

was for his right arm and asked to have his medication back. (*Id.*) Plaintiff claims that, at this point, the officers began to "get aggressive." (*Id.*) Officers attempted to force Plaintiff onto the floor and Plaintiff yelled that he had not done anything to deserve that treatment. (*Id.*) Plaintiff's feet were taken up from under him and as Plaintiff fell, Defendant Plowman was holding his head. (*Id.*) Plaintiff landed on the right side of his face "splittin [sic] [his] right eyebrow." (*Id.*)

Plaintiff states that he was dazed from the impact and that Officer Jameson began pressing his thumb into Plaintiff's upper jaw area, behind Plaintiff's ear. (*Id.*) Plaintiff was bleeding and repeatedly asked for help. (*Id.*) Plaintiff states that Defendant Jameson kept pressing his head down while Plaintiff was being punched and that some officers were holding him down with his hands cuffed behind his back. (*Id.*, PageID.3-4.) Plaintiff was placed in a spit mask and a restraint chair. (*Id.*, PageID.4.) Defendants Plowman and Jameson continued to assault Plaintiff while he was being placed in the restraint chair because Plaintiff attempted to reposition his right arm. (*Id.*) Defendant Plowman began punching Plaintiff in his abdomen and then once in his face and left eye. (*Id.*) Plaintiff states that while he was in the restraint chair, his right arm was bent in the wrong way. (*Id.*) Plaintiff was wheeled to the administrative segregation unit to a room with no cameras and was choked and beaten some more. (*Id.*)

Plaintiff contends that his vision is blurred in his right eye, and that he has muscle and nerve damage to his right arm as a result of Defendants' conduct on August 15, 2024. (*Id.*) Plaintiff states that he did not have proper medical treatment following the incident and is still being housed around the same staff. Plaintiff filed a grievance, but no corrective action has been taken to prevent retaliation or future problems. (*Id.*)

Plaintiff claims that since that incident, he has been confined to administrative segregation in the START Program and has been denied showers. Plaintiff states that he was denied food on

September 5, 6, 14, and 15 of 2024. He alleges that he does not have personal hygiene products such as toothpaste and soap and that the supply cart is not stocked, so Plaintiff cannot get supplies to write anyone or to file grievances. Plaintiff also claims that he is being denied medications by the nurses. (*Id.*, PageID.5.)

As noted above, a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the imminent danger exception to the three strikes rule. Therefore, the fact that Plaintiff was assaulted on August 15, 2024 by the named Defendants is not sufficient to show that he faced imminent danger at the time he filed his complaint.

In addition, Plaintiff's allegations regarding his injuries do not demonstrate that Plaintiff is in imminent danger of serious physical injury. "[P]hysical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm. Minor harms or fleeting discomfort don't count." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). Plaintiff alleges that he is currently experiencing blurred vision in his right eye, nerve problems in his right arm, and that his voice is messed up from being choked. However, Plaintiff does not allege that these symptoms are of the type and severity that could be said to be "serious" within the meaning of § 1915(g), leading to possible death or severe bodily harm.

Nor do Plaintiff's claims that he was denied meals on isolated occasions and was not given hygiene supplies constitute a threat of possible death or severe bodily harm. In addition, with regard to Plaintiff's claims related to his treatment in administrative segregation in the days following the assault on August 15, 2024, Plaintiff does not allege facts showing that any of the named Defendants were responsible for Plaintiff's treatment. Because Plaintiff's claims against Defendants cannot provide him any relief that would alleviate the alleged serious risk of physical injury, Plaintiff is not in imminent danger from these Defendants. *See Pettus v. Morgenthau*, 554

6

F.3d 293, 297 (2d Cir. 2009) (holding that there must be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053–54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison); *see also Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 71 (D.C. Cir. 2020) (holding that a nexus between the alleged imminent danger and the claims raised is required to avoid the conclusion that, at the same time it established the three-strikes rule, Congress intended to "'engraft[] an open-ended exception that would eviscerate the rule'") (quoting *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (2d Cir. 2001)); *Meyers v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 90, 94–95 (4th Cir. 2020) (citing *Pettus*, *inter alia*, and holding that "the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged and relief sought in the underlying claim"); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*).

Although the Sixth Circuit has yet to specifically address whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement is not the result of a judicially created element imposed upon the language of the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. 554 F.3d at 297. That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), quoted in *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)). An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to § 1915(g), the exception must be read in light of the strong general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named

defendants. *Pettus*, 554 F.3d at 297; *Pinson*, 964 F.3d at 71. Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Because Plaintiff's allegations concerning the ostensibly "imminent" danger he faces are incapable of redress in the instant case against the named Defendants, Plaintiff cannot demonstrate the requisite nexus. Permitting Plaintiff to proceed *in forma pauperis* based on allegations of unrelated imminent danger would permit the exception to § 1915(g) to swallow the rule.

In reaching this conclusion, the Court does not discount the pain that Plaintiff alleges he experiences. Plaintiff's allegations, however, fail to show that he is in danger of imminent physical injury from Defendants. *See Rittner*, 290 F. App'x at 798 (footnote omitted). That is not to say that Plaintiff's allegations are "ridiculous . . . baseless . . . fantastic—or delusional . . . irrational or wholly incredible." *Vandiver*, 727 F.3d at 585. They are, however, insufficient.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma* pauperis. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[2]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:    October 17, 2024                    /s/ Jane M. Beckering
                                              Jane M. Beckering
                                              United States District Judge

---

[2] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.